1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Iddy M. Pierre-Canel and Emmanuel J. Simeus,<br><br>Plaintiffs,<br><br>vs.<br><br>American Airlines, et al.<br><br>Defendants. | No. 4:17-CV-122-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (Doc. 63) filed by Defendant American Airlines, Inc. ("American"). Plaintiffs Iddy M. Pierre-Canel ("Pierre-Canel") and Emmanuel J. Simeus ("Simeus") (collectively, "Plaintiffs") have filed a response (Doc. 65) and American has filed a reply (Doc. 67). Oral argument has been requested. However, the issues are fully presented in the briefs and the Court finds it would not be assisted by oral argument. The Court declines to schedule this matter for oral argument. LRCiv 7.2(f).

I. *Factual and Procedural Background*

On February 8, 2016, Pierre-Canel's child Carm-Idrelle Casseus ("Casseus") died in Tucson, Arizona. Adair Funeral Home arranged for Casseus's remains to be flown from Tucson, Arizona to Snowden Funeral Home in Baltimore, Maryland for cremation and for memorial services.

Pierre-Canel's return flight to Tucson, with a layover in Dallas/Fort Worth, was booked with American for March 5, 2016. Simeus returned to Tucson a few days earlier.

Pierre-Canel had Casseus's cremated remains placed in a sealed screw top urn ("the Urn"). Plaintiffs assert Pierre-Canel packed the Urn, her daughter's pictures, jewelry box and jewelry, personal items, and a yellow envelope containing numerous sympathy cards and monetary gifts in her Louis Vuitton duffel bag (the "LV Bag"). During her deposition testimony, Pierre-Canel testified that the LV Bag contained the Urn, three suits, ten dresses, two pairs of jeans, four pairs of dress pants, four pairs of shoes, cosmetics, one purse, two wallets, lingerie, undergarments, sandals and Casseus's $24,000 in jewelry. Simeus testified during his deposition that he did not know what Pierre-Canel packed. Pierre-Canel planned to carry the LV Bag and a red roller bag (the "Red Bag") as carry-on baggage on the aircraft. Pierre-Canel asserts she arrived at the Baltimore-Washington International Airport ("BWI") with three bags; she checked a large gray bag at the ticket counter. American asserts its baggage records indicate Pierre-Canel checked one bag at 4:20 p.m. at the ticket counter. Plaintiffs point out that this assertion by American assumes their baggage records are accurate. American's customer service records and an American Senior Investigator admit American mishandled the bag(s) in question.

Pierre-Canel asserts she carried the remaining two bags (the LV Bag and the Red Bag) and proceeded towards the departure gate. At the TSA screening area, the TSA agent requested Pierre-Canel open the bags. The TSA agent noticed the Urn in the LV Bag and inquired about its contents. Pierre-Canel told the TSA agent the Urn contained the ashes of her daughter, Casseus; the TSA agent told Pierre-Canel not to carry the Urn outside the bag, just to keep it in her carry-on bag and proceed to the departure gate.

At the American departure gate, Pierre-Canel checked in. She asserts she then sat in the waiting area at the gate and, mourning the loss of her daughter, began crying quietly. Plaintiffs assert a gate agent approached Pierre-Canel three (3) different times and asked her if she could check Pierre-Canel's bags. Plaintiffs assert Pierre-Canel specifically told a gate agent that her daughter's ashes were in an urn in her LV Bag and refused to have her bags checked. As Pierre-Canel prepared to board the plane at the jetway door, a woman who was later identified as Gate Agent Rosann McCormack ("McCormack") took both carry-on bags

from Pierre-Canel. Plaintiffs also assert that neither McCormack nor anyone else told Pierre-Canel to remove valuable items from her bags. Pierre-Canel states she believed the gate agent was going to carry Pierre-Canel's bags on the airplane for her. Plaintiffs assert that, after Pierre-Canel took her seat in first class and the plane doors closed, a Gate Agent gave Pierre-Canel two baggage claim tickets.

American asserts its baggage records indicate Pierre-Canel checked one bag at the gate at 4:57 p.m. Plaintiffs assert the bag shown on American's records to have been checked in at 4:57 p.m. likely belonged to a different passenger whose luggage was also mis-tagged.[1] Plaintiffs assert, "[American's] own records show that their baggage service operators had only six minutes time to manipulate the bags from the time it was checked and the time it was loaded onto the plane. Therefore, Pierre-Canel's luggage could not have been checked at 4:57, as alleged by [American.]" Pl. SOF (Doc. 66, p. 5). The records further indicate the gate-checked bag was a red American Tourister bag and not a Louis Vuitton bag. American points out this was a full hour before the plane was boarded at 5:48 p.m. American also points out that Pierre-Canel testified that in all the times she has ever flown, she has never had a gate agent walk bags onto the plane for her.

Wendy Yang ("Yang"), McCormack, and Michael Bailey ("Bailey"), the American gate agents/customer service representatives working Pierre-Canel's flight, testified that they have no recollection of a woman from Pierre-Canel's flight telling them she was carrying an urn in a Louis Vuitton bag. They also testified that it would have stuck out in their minds if they had been told an urn was in a bag. However, neither McCormack nor Yang remember working Pierre-Canel's flight on March 5, 2016, and Bailey testified he was not at Pierre-Canel's gate on March 5, 2016. McCormack, the American employee identified by Pierre-Canel as the one who she believed would carry her bags onto the plane, testified that she has offered to carry a passenger's bags to the plane for them; however, McCormack also testified

---

[1] American asserts Plaintiffs' use of the word "likely" shows that Plaintiffs have no evidence to support this statement.

- 3 -

that, in her opinion, if a person had carried their bags from the ticket counter to the gate agent, they would not need assistance to carry those same bags onto the plane.

Yang, McCormack, and Bailey also testified that, if a bag is checked there will always be a computerized record. However, Bailey testified that a computer record may not exist (for example, when there is no remaining overhead space or when systems are down). American asserts that even where there was an error (i.e., the wrong tag was placed on the Red Bag), a record is made of the event, unlike the alleged checking of the LV Bag, of which there is no record in American's computer system.

The LV Bag and the Red Bag, which Plaintiffs assert were checked by American personnel, did not timely arrive at the Tucson International Airport ("TIA"). Pierre-Canel went to the baggage claim department and told the American baggage personnel her bags had not arrived. Pierre-Canel asserts she immediately requested assistance from American personnel to locate the Urn containing the ashes of Casseus, as well as her lost bags containing other valuable property. Plaintiffs asserts Pierre-Canel retrieved the LV Bag at TIA the next day. However, Plaintiffs assert the Urn was not in the LV Bag and that the bag had been torn and the zipper broken. Pierre-Canel hoped the Urn would be located because she asserts American personnel told her that, because the LV Bag had been damaged, the Urn and other belongings may have been placed in the Red Bag. Simeus testified that he went with Pierre-Canel to TIA that next day; he testified the LV Bag was at the airport, was damaged and a lot of stuff was missing.

Pierre-Canel contacted American almost daily, but asserts American had no explanation and could not locate the Red Bag. A March 8, 2016 email from Pierre-Canel states, ""[u]pon checking in at BWI, I checked two bags. When I arrived to Tucson at approximately 11:20 p.m., I proceeded to luggage claims, where I could find only one of my two bags." Am. SOF, Ex. 10 (Doc. 64-10). Plaintiffs assert in context, this statement was referring to the two bags that were checked at the gate.

Pierre-Canel did not provide receipts for the property (e.g., jewelry) alleged to have been missing from the luggage. Pierre-Canel testified that some of the items had not been

recently purchased.

On or about March 11, 2016, American's Dallas warehouse informed Pierre-Canel that the Red Bag had been found but the Urn was missing. Plaintiffs assert American's employees also told Pierre-Canel she had been given the wrong baggage claim tickets for her carry-on baggage at BWI. Pierre-Canel received the Red Bag via Federal Express on or about March 16, 2016. Pierre-Canel asserts she discovered that not only was the Urn missing, but also missing were the jewelry, the sympathy cards, and the monetary gifts.

Pierre-Canel continued to contact American on almost a daily basis, via emails and telephone calls, regarding the lost Urn. Plaintiffs assert American agreed to fix the damaged LV Bag. American asserts there is no evidence that the LV Bag was ever damaged – Although American issued a "call tag" for the LV Bag, Pierre-Canel never sent the bag to be examined.

Plaintiffs assert that, after the Urn was lost, the grief from the death of Casseus remarkably magnified and caused intense strain on Plaintiffs' relationship with each other. Simeus testified that Pierre-Canel was withdrawn, would not talk and spent hours by herself following the death of Casseus. When asked to specify the difference between the distress from the death of Casseus and the distress from losing the Urn, Simeus did not know how to separate the two. However, he did testify that both he and Pierre-Canel emotionally felt that they lost Casseus twice and that it was difficult to describe. American asserts Pierre-Canel and Simues both testified that, as a result of losing the Urn, neither have seen a psychiatrist or psychologist for counseling and have not had to take any medication. Plaintiffs point out that Pierre-Canel and Simeus actually testified that they were not on medication and that American's attorney cut-off Pierre-Canel's response to this deposition question. Additionally, Pierre-Canel did receive counseling from church leaders. However, Plaintiff's counsel refused to allow Plaintiffs to testify as to the counseling they received

from church leaders.[2] American asserts Plaintiffs admitted to not having experienced the "necessary physical symptoms" to constitute severe emotional distress. Plaintiffs object to the characterization of "necessary physical symptoms" to constitute severe emotional distress.

American's Conditions of Carriage states, *inter alia*:

> . . . In the event it is necessary to check carry-on bags, ensure that fragile or valuable items, such as keys, medication or computers are carried in your personal item . . .
>
> \* \* \* \* \*
>
> American's liability for loss, damage or delayed delivery of checked baggage, including transfer baggage, is limited to the actual value of the baggage or $3,500, whichever is less, unless the passenger declares a higher value for loss of baggage, not to exceed $5,000.00 . . . Excess valuation coverage is not available for and does not apply to items excluded in our liability below.
>
> \* \* \* \* \*
>
> American does not assume liability for any of the following items in or as checked baggage: antiques, artifacts, artwork, books, and documents, china, computers and other electronic equipment, computer software, fragile items, furs, heirlooms, keys, liquids, money, orthotics, surgical supports, perishable items, photographic, video and optical equipment, precious metals, stones or jewelry (time pieces), securities and negotiable papers, silverware, samples, unique or irreplaceable items or any other similar valuable items.

Am. SOF, Ex. 15 (Doc. 64-15). Counsel for American asserts the following provision is also included in the Conditions of Carriage, but such language is not included in the exhibit:

> American does not accept these items in or as checked baggage and assumes no responsibility or liability for such items, regardless of whether American knew or should have known of the presence of such items in checked or transferred baggage. If any such items are lost, damaged or delayed, you will not be entitled to any reimbursement under American's standard baggage liability, or under any declared excess valuation.

Am. SOF (Doc. 64, p. 6).[3] Plaintiffs assert, "Defendant's Contract specifically states, 'When

---

[2] American asserts a privilege cannot be used as both a sword and a shield under Arizona law.

[3] An American Conditions of Carriage located online includes this language. https://www.american-airlines.nl/intl/es/footer_en/conditionsOfCarriage.jsp?v_locale=en_US&v_mobileUAFlag=AA. However, as the language is not included in the exhibit provided by American, it is not known if this language was included in the Conditions of

- 6 -

you travel with human remains, they'll be treated **as carry-on baggage**.' CSOF 24 (emphasis added)." Pl. Resp. (Doc. 65, p. 14).

On March 16, 2017, Plaintiffs filed a Complaint against American and unnamed Doe defendants for claims of breach of the Conditions of Carriage contract, negligence and gross negligence, intentional infliction of emotional distress, and bailment. Plaintiffs' prayer for relief includes a request for punitive damages.

On May 30, 2018, American filed a Motion for Summary Judgment (Doc. 63). Plaintiffs filed a response (Doc. 65) on June 29, 2018, and American filed a reply (Doc. 67) on July 16, 2018.

II. *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 784 (9th Cir. 2007).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Celotex Corp.*, 477 U.S. at 248 (internal quotes omitted); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("a plaintiff cannot rely on mere allegations but rather must "set forth" by affidavit or other evidence "specific facts"). The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment.

---

Carriage in effect at the time of events of this case.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citation omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (citation omitted).

III. *Consideration of Admissible Evidence*

The Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits). Moreover, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [They] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *Varig Airlines*, 690 F.2d at 1238. Declarations and other

1  evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*,
2  953 F.2d 478, 484 (9th Cir. 1991). Additionally, the court is to review the record as a whole,
3  but must disregard evidence favorable to the moving party that the jury is not required to
4  believe and must give credence to the uncontradicted and unimpeached evidence of the
5  moving party, at least "'to the extent that that evidence comes from disinterested witnesses.'"
6  *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000) (citation omitted).

7  The Court will only consider the admissible evidence that is supported by specific
8  facts that may show a genuine issue of material fact. *See Anderson*, 477 U.S. at 248 (1986).

IV. *Genuine Issue of Material Fact*

Throughout its request for summary judgment, American argues there is no genuine issue of material fact regarding the events of Pierre-Canel's flight/baggage. In support of this argument, American points to contradictions in Pierre-Canel's statements, documents and testimony. Similarly, American asserts there is no evidence to support some of Plaintiffs' claims. For example, American asserts it is an assumption that the "Urn and Jewelry were in Ms. Pierre-Canel's bag in the first place, even though there is no evidence of that." MSJ (Doc. 63, p. 10 n. 7). However, Pierre-Canel testified that she packed such items in the LV Bag. Am. SOF, Ex. 8 (Doc. 64-8, p. 11 of 54). The evidence of a nonmoving party is to be believed and all justifiable inferences are to be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. The Court is concerned that Pierre-Canel's deposition testimony is contradicted by her affidavit as to the contents packed in the LV Bag. *Allstate Indemnity Co. v. Ridgley*, 214 Ariz. 440, 444, 153 P.3d 1069, 1073 (App.2007) (holding that "when a party's affidavit is submitted to defeat summary judgment and contradicts the party's own deposition testimony, it should be disregarded in deciding the motion."). The sham affidavit rule recognizes that, "because deposition testimony is subject to cross-examination, it is inherently more reliable than an affidavit." *Allstate Indem. Co. v. Ridgely*, 214 Ariz. 440, 443, 153 P.3d 1069, 1072 (Ct. App. 2007). However, "certain exceptions exist to the sham affidavit rule, for instance, 'if the affiant was confused at the deposition and the affidavit

- 9 -

explains those aspects of the deposition testimony . . .'" *Id*. at 442. The determination of whether an affidavit is a sham is to be addressed on a case-by-case basis. *Id*. at 444. Here, the quantity of items to which Pierre-Canel testified fit in a carry-on bag is simply incredible. The Court finds it likely that Pierre-Canel's explanation in the affidavit, that she could not state which items were in which bag, is more credible than the deposition testimony. The Court finds this deposition testimony does not warrant concluding that genuine issues of fact do not exist.

Moreover, when placed in context, Pierre-Canel has maintained a consistent series of events. For example, although American argues that Pierre-Canel admitted "that she had never had a gate agent carry her bags onto the plane before[,]" Reply (Doc. 67, p. 3), Pierre-Canel's deposition testimony could be interpreted as meaning prior to the flight at issue. Am. SOF, Ex. 8, 65:4-14 (Doc. 64-8, p. 18 of 54). Further, discrepancies may be attributed to Pierre-Canel's use of English, as argued by Plaintiffs.

Additionally, while American's documentary evidence (e.g., baggage records) appears compelling, Bailey testified that there may be some circumstances where a computer record may not be generated. Moreover, McCormack testified that she has assisted passengers onto a plane and also carried carry-on bags to the plane for passengers. Where, as here, McCormack does not specifically recall Pierre-Canel's flight, a jury could reasonably conclude that Pierre-Canel was such a passenger. Lastly, although American argues that there is nothing to corroborate Pierre-Canel's version of events, Simeus does corroborate that the LV Bag was retrieved from the airport the day after Pierre-Canel's flight arrived. The significance of any bias or self-interest based on being Pierre-Canel's spouse or co-plaintiff is more appropriately weighed by a trier of fact. Similarly, it is up to a jury to weigh Pierre-Canel's testimony that she could have been mistaken as to which items were in a bag – i.e., the cremated remains were not in a checked bag as opposed to she does not recall which items were in the LV Bag or the Red Bag. *See* Pl. SOF, Ex. 29 (Doc. 66-29).

While the documentary evidence before the Court at this time appears strong, the Court recognizes that "summary judgment should not be used as a substitute for jury trials

simply because the trial judge may believe the moving party will probably win the jury's verdict, nor even when the trial judge believes the moving party should win the jury's verdict. *Orme Sch. v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (citing *Cox v. English–American Underwriters*, 245 F.2d 330, 333 (9th Cir.1957)).

V. *Limitation of Liability*

American argues that its coverage is limited to $3,500 or $5,000 based on the Conditions of Carriage. Indeed, a passenger is to "ensure that fragile or valuable items . . . are carried [in the passenger's] personal item." Am. SOF, Ex. 15 (Doc. 64-15). Further, liability is limited under the Conditions of Carriage to $3,500 or $5,000, depending on whether a passenger has declared a higher value. Additionally, American points out that Yang, McCormack and Bailey all testified that gate agents remind passengers to remove any and all valuable items when their bags are being checked.

However, Plaintiffs argue that Yang and McCormack do not recall working that day. While this arguably supports American's argument that if, anything such as a crying woman telling them she was carrying her daughter's cremated remains in an urn had occurred, they would have remembered the event, such evidence is not as strong as an affirmative memory. In other words, the weight to be placed on this evidence is better left to a trier of fact. Additionally, Plaintiffs argue that the choice to check the LV Bag and Red Bag was taken from Pierre-Canel when McCormack took the LV Bag and the Red Bag from her. *See e.g. Coughlin v. Trans World Airlines, Inc.*, 847 F.2d 1432, 1434 (9th Cir. 1988) ("[I]t is clear that TWA cannot now attempt to enforce a provision of the contract it has violated. TWA's refusal to allow Mrs. Coughlin to protect her valuables by carrying them personally effectively denied her the benefit of her bargain with respect to the tariff agreement."). If a jury were to accept Pierre-Canel's entire version of events, it follows they would conclude the bags were checked without Pierre-Canel's knowledge or consent. While Pierre-Canel did acknowledge that a gate agent was "insisting" she check her bags, Pierre-Canel consistently has stated that she repeatedly rebuffed those efforts. Although American argues

- 11 -

1 this shows Pierre-Canel knew, based on the insistent gate agent, that her bags were being
2 checked, a jury could just as reasonably conclude that Pierre-Canel believed that the gate
3 agent had acquiesced to Pierre-Canel's insistence that she keep the bags with her.

VI. *Intentional Infliction of Emotional Distress*

"A plaintiff suing for intentional infliction of emotional distress must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." *Watkins v. Arpaio*, 367 P.3d 72, 74–75 (Ariz. Ct. App. 2016); *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (discussing difference between negligent and intentional torts). "The trial court determines whether the alleged acts are sufficiently extreme and outrageous to state a claim for relief." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995); Restatement (Second) of Torts § 46, comment h.

American asserts there is no material issue of fact to establish intentional infliction of emotional distress. American argues that, because the documented evidence shows that the LV Bag was never checked, it cannot be liable because the Urn was never in American's possession. However, under the version of events as presented by Plaintiffs, *see Anderson*, 477 U.S. at 255 (the evidence of a nonmoving party is to be believed), an American employee knew the LV Bag contained the cremated remains of Pierre-Canel's daughter, and checked the LV Bag against Pierre-Canel's objection without affording Pierre-Canel an opportunity to remove the Urn. *See e.g. A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1208–09 (9th Cir. 2016) ("Arizona courts have traditionally considered 'defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition.'") (citations omitted). There is a material issue of fact whether such conduct is extreme and outrageous and whether it was committed with

reckless disregard of the near certainty emotional distress would result.

American also argues that Arizona courts have held that crying, being stressed and upset or having occasional trouble sleeping is not enough to establish severe emotional distress. *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199, 650 P.2d 496 (App. 1982). American asserts that "[s]evere emotional distress requires anxiety that results in physical symptoms such as high blood pressure, a nervous tic, chest pains, fatigue and dizziness. *Ford v. Revlon*, 153 Ariz. 38, 41, 734 P.2d 580, 583 (1987); *Pankratz v.Willis*, 155 Ariz. 8, 12, 17, 744 P.2d 1182 (App. 1987)." MSJ (Doc. 63, p. 13). The Court of Appeals, however, has recognized that the Restatement negates a requirement of bodily harm. *See Pankratz.* Nonetheless, the *Pankratz* court found a material issue of fact where anger and depression, *coupled with physical ailments* such as headaches and hemorrhoids, supported a claim for emotional distress. More recently the appellate court stated:

> [Plaintiff asserted defendant's [actions had aggravated Plaintiff's existing medical condition (a vertebral artery blockage) "to the point of [it] being an emergent condition," but he did not explain how (or if) the supposed exacerbated condition had any physical manifestations or avow that he had received any medical treatment for it. Moreover, [plaintiff] claimed he suffered from insomnia due to "job stress and anxiety" but did not offer any evidence that it was [defendant's] conduct, and not other employment-related stressors, that caused the stress and anxiety leading to the insomnia.
>
> This evidence did not create a material question of fact regarding whether [defendant's] actions caused [plaintiff's] severe emotional distress.

*Harding v. Sternsher*, No. 1 CA-CV 16-0127, 2017 WL 3138184, at *3 (Ariz. Ct. App. July 25, 2017), as amended on reconsideration (Oct. 25, 2017), review denied (May 8, 2018). Additionally, the Court is not aware of any Arizona Supreme Court authority that adopts a view that does not require a physical manifestation of the emotional harm.

Plaintiffs cite to *Allen v. Jones*, 104 Cal. App. 3d 207 (Cal. App. 1980), in support of their assertion that emotional distress was suffered in this case. However, Plaintiffs fail to acknowledge that the court stated "that damages are recoverable for mental distress without physical injury for *negligent* mishandling of a corpse . . ." 104 Cal. App. 3d at 214 (emphasis added). Indeed, that court concluded that a claim for the intentional infliction of emotional distress had not been stated.

The Court finds a genuine issue of material fact has not been presented as to the intentional infliction of emotional distress claim. Summary judgment will be entered in favor of American and against Plaintiffs as to this claim. *See Harding*.

VII. *Punitive Damages*

In Arizona, a plaintiff must prove by clear and convincing evidence that the defendant engaged in "reprehensible conduct combined with an evil mind over and above that required for commission of a tort" to obtain an award of punitive damages. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986). "The key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them." *Id*. at 331, 723 P.2d at 680 (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986)); *see also Volz v. Coleman Co.*, 155 Ariz. 567, 570, 748 P.2d 1191, 1194 (1987) (recognizing that recklessness or even gross negligence is insufficient to support punitive damages). Furthermore, in Arizona, punitive damages are not ordinarily available as a remedy in breach of contract actions. *Continental Nat'l Bank v. Evans*, 107 Ariz. 378, 382, 489 P.2d 15, 19 (1971) (holding that punitive damages cannot be awarded for breach of contract). Rather, punitive damages are only available when an action sounds in tort. *See In re Marriage of Benge*, 151 Ariz. 219, 224, 726 P.2d 1088, 1093 (App. 1986). "[A]lthough punitive damages do not lie for breach of contract, they are recoverable where the breach of contract constitutes a tort." *Lerner v. Brettschneider*, 123 Ariz. 152, 156, 598 P.2d 515, 519 (App. 1979).

American argues that, even if the Urn and Jewelry were checked, American Airlines made an honest mistake by temporarily sending the bag to Dallas; i.e., American's actions do not rise to the level of "evil." However, this fails to acknowledge that Plaintiffs assert the LV Bag was detained one day and the Urn and Jewelry disappeared from that bag. In conjunction with asserting it never had possession of the LV Bag, American does not provide any explanation for where the LV Bag was until Pierre-Canel and Simeus picked it up at the

airport the day after the flight arrived. If the jury believes the events occurred as asserted by Plaintiffs, there is a genuine dispute as to whether American's conduct warrants an award of punitive damages.

VIII. *Negligence/Gross Negligence*

American points out that Plaintiffs must show that any negligence or gross negligence actually caused harm to Plaintiffs for Plaintiffs to establish a claim for negligence or gross negligence. *See e.g. Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563, 416 P.3d 824, 827 (2018). American argues that Plaintiffs cannot establish that any negligence of American caused any harm to Plaintiffs because Plaintiffs cannot establish that American ever had possession of the LV Bag or its contents – that American may have negligently diverted Pierre-Canel's Red Bag to Dallas does not show any harm to Plaintiffs. Again, this fails to consider that a jury may accept Pierre-Canel's version of events.

IX. *Breach of Contract*

A breach-of-contract claim requires a plaintiff to show (1) the existence of a contract, (2) breach of that contract, and (3) resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). American argues that, because the LV Bag, the Urn and the Jewelry were never checked, American did not breach the Conditions of Carriage by checking the LV Bag. As a genuine issue of material fact is in dispute, summary judgment of this claim is not appropriate.

X. *Bailment*

To establish a bailment there must be "a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. *Webb v. Aero Int'l, Inc.*, 130 Ariz. 51, 52–53, 633 P.2d 1044, 1045–46 (Ct. App. 1981) (citation omitted). Although American argues Plaintiffs cannot, as a matter of law, establish bailment because Amerian never took custody or possession of the LV Bag,

the Urn or the Jewelry, the Court finds that a material issue of fact is in dispute.

XI. *Damages*

American asserts Plaintiffs cannot establish damages with any reasonable certainty. However, American has not cited any authority which indicates that documentary evidence, as opposed to testimonial evidence is needed to establish damages. The Court finds summary judgment as to damages is not appropriate.

Accordingly, IT IS ORDERED:

1. The Motion for Summary Judgment (Doc. 63) filed by American Airlines, Inc., is GRANTED IN PART AND DENIED IN PART.

2. Summary judgment is awarded in favor of American Airlines, Inc., and against Plaintiffs as to Count III, the claim for Intentional Infliction of Emotional Distress. Summary judgment is denied as to all other claims.

3. The Court's Order that the parties are to submit a Joint Pretrial Statement/Proposed Order within thirty (30) days of the date of a ruling on dispositive motions, *see* February 26, 2018 Order (Doc. 53), is modified pending resolution of additional discovery as discussed in the Order addressing the Motion for Leave to Supplement Summary Judgment Record with Newly Discovered Evidence.

DATED this 21st day of March, 2019.

_____
Cindy K. Jorgenson
United States District Judge